IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

JOSH D DUNLOP                                                                              PETITIONER
*Reg. #22276-026*

v.                                            2:22-cv-00204-KGB-JJV

JOHN P YATES,                                                                             RESPONDENT
*Forrest City Medium*

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Kristine G. Baker. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. Your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of this recommendation. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

### DISPOSITION

I.  **INTRODUCTION**

On May 21, 2019, in the United States District Court for the Central District of Illinois, Joshua D. Dunlop ("Petitioner") pleaded guilty to the charges of Conspiracy to Distribute and Possess with Intent to Distribute at least 50 Grams of Actual Methamphetamine followed by five years of supervised release. *USA v. Dunlop*, No. 4:17-cr-40107-SLD-5 (C.D. Ill. May 21, 2019), Doc. No. 365. Mr. Dunlop was serving that sentence at the Forrest City Low Federal Correctional Institution ("FCI Forrest City") when he filed his Petition in November 2022. (Doc. Nos. 1, 9.) In January

2023, he was transferred to Federal Correctional Institution El Reno ("FCI El Reno") located in Oklahoma. (Doc. No. 14); https://www.bop.gov/inmateloc/ (last visited April 12, 2023). According to the Bureau of Prisons' calculation, Mr. Dunlop's projected release date is April 30, 2026.[1] (Doc. No. 17-1 at 2.)

Mr. Dunlop brings the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 *pro se*. (Doc. No. 9.) He claims the BOP: (1) violated his right to freedom of speech; (2) prevented him from engaging in the administrative remedies process; (3) placed him in a Special Housing Unit wrongfully; and (4) disregarded protocol. (*Id*. at 16-22.) He requests all incident reports filed against him be expunged, all sanctions against him be removed, extra good time credit be awarded for the time he spent in a Special Housing Unit ("SHU"), and to be transferred to another BOP facility. (*Id*. at 13.)

Respondent John P. Yates, Warden of the FCI Forrest City Low, filed a Motion to Dismiss and Response to Mr. Dunlop's Petition, asserting dismissal is appropriate because: (1) this Court lacks jurisdiction; (2) Mr. Dunlop's claims are not cognizable in habeas; and (3) Mr. Dunlop failed to exhaust his administrative remedies. (Doc. No. 17 at 2-4.) Alternatively, Respondent argues Mr. Dunlop's good time credit claims are meritless, and dismissal is warranted. (*Id*. at 5.) Mr. Dunlop has not responded to the Motion to Dismiss, and this matter is now ripe for a decision. After careful consideration, I recommend the Motion to Dismiss be GRANTED and Mr. Dunlop's Petition be DISMISSED without prejudice.

II.   **ANALYSIS**

   a.   **Jurisdiction**

---

[1] Mr. Dunlop's actual projected release date is unclear from the record. Respondent advises his projected release date is April 30, 2025, (Doc. No. 17) while Aleshia Morris, Associate Warden's Secretary, lists April 30, 2026 (Doc. No. 17-1 at 2, 6.) Meanwhile, the Bureau of Prisons' website reflects June 9, 2025. *See* https://www.bop.gov/inmateloc/ (last visited April 12, 2023).

Respondent contends that because Mr. Dunlop was transferred from FCI Forrest City to FCI El Reno, a BOP facility located in Oklahoma, this Court lacks jurisdiction over the Petition. (Doc. No. 17 at 2.)  Because the named respondent is John P. Yates, the warden of FCI Forrest City, there is "no appropriate respondent with custody of Dunlop located in this district."  (*Id*.) This, Respondent reasons, is fatal to this Court's assertion of jurisdiction.  (*Id*.)

It is true that the application for a writ of habeas corpus shall name the respondent as "the person who has custody over [the petitioner]."  28 U.S.C. § 2242; *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004).  That is the person "with the ability to produce the prisoner's body before the habeas court", which is the "warden of the facility where the prisoner is being held."  *Id.* at 435. And pursuant to 18 U.S.C. § 2241(a), "writs of habeas corpus may be granted by…the district courts…within their respective jurisdictions."  This simply requires that the "court issuing the writ have jurisdiction over the custodian."  *Rumsfeld*, 542 U.S. at 442 (quoting *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 495, 93 S.Ct. 1123, 1130 (1973)).  Courts have jurisdiction over custodians located in the district of confinement.  *Id*.

These straightforward rules become less so when a petitioner properly files a habeas petition and is subsequently transferred outside the jurisdiction of the reviewing court.  The Supreme Court of the United States held that "when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction"; however, it can only "direct the writ to [a] respondent *within its jurisdiction*." *Rumsfeld*, 542 U.S. at 441 (emphasis added).  And the United States Court of Appeals for the Eighth Circuit decided that in a transfer situation, habeas jurisdiction will not be defeated "but only 'so long as an appropriate respondent with custody remain[s]' in the district."  *Copley v. Keohane*, 152 F.3d 827, 830 (8th Cir. 1998).

Applying that rationale here, this Court had jurisdiction over Mr. Dunlop's Petition when he was incarcerated at FCI Forrest City, a BOP facility located in the Eastern District of Arkansas. And the Court lost jurisdiction when he was transferred to FCI El Reno, a facility located in Oklahoma. So, the question becomes, pursuant to 28 U.S.C. § 1631, is it in the interest of justice to transfer this action to a court with jurisdiction or to dismiss the action entirely for want of jurisdiction? *See Jones v. Hendrix*, 2021 WL 2402196, *2 (E.D. Ark. June 11, 2021). Because I find that Mr. Dunlop's Petition should be dismissed for failure to state claims cognizable in habeas, failure to exhaust his administrative remedies, and failure to state a claim that amounts to a due process violation, transfer of the Petition would not be in the interest of justice.

### b. Conditions-of-Confinement Grounds

As stated above, Mr. Dunlop lodges four complaints against the BOP. First, he claims the BOP violated his First Amendment rights by depriving him of phone privileges and causing "major mail issues." (Doc. No. 9 at 16.) Second, he contends the BOP staff violated the Fifth and Sixth Amendments by procrastinating, using deception, and misplacing his complaints to prevent him from engaging in the administrative remedy process.[2] (*Id*. at 17.) Third, he argues the BOP violated the Eighth Amendment by placing him in a SHU, which prevented him from earning good time credit. (*Id*. at 18.) Lastly, he alleges BOP staff failed to provide a "safe and orderly environment" in violation of BOP protocol and the Eighth Amendment, leading him to refuse to depart the SHU, which resulted in a deduction of 14 days of good time credit. (*Id*. at 18-19.) Each argument is addressed in turn.

The issue is that Mr. Dunlop's first and second claims, and the portions of his third and fourth claims that do not concern good time credits, are not cognizable in habeas corpus and are

---

[2] As this claim is related to his First Amendment claim, the Court will address the first two claims together as claims arising under the First Amendment.

4

more suited for an action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the federal analog to 42 U.S.C. § 1983. The essence of habeas corpus is "an attack by a person in custody upon the legality of that custody," and the traditional function of the writ "is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). If a prisoner is not challenging the validity of his conviction or the length of his detention, "then a writ of habeas corpus is not the proper remedy," and the district court lacks jurisdiction to issue a writ. *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam). If a prisoner is making a constitutional challenge to the conditions of his prison life – but not to the fact or length of his custody – then a § 1983 or *Bivens* action is the proper remedy. *Preiser*, 411 U.S. at 499.

Besides his two good time credit requests, the remainder of Mr. Dunlop's claims neither challenge his conviction nor seek a remedy that would result in his earlier release from prison. Rather, those claims allege illegal treatment he received while incarcerated. Therefore, his first and second claims, as well as the portions of his third and fourth claims that do not involve good time credits, relate to the conditions of his confinement. And a habeas petition is not the proper claim to remedy his alleged injuries. *See Spencer v. Hayes*, 774 F.3d 467, 469-70 (8th Cir. 2014).

The United States Court of Appeals for the Eighth Circuit counseled that the "appropriate construction" in cases such as this one would be to convert Mr. Dunlop's claims to a *Bivens* action, after having obtained his consent to do so. *Spencer,* 774 F.3d at 471. However, in *Spencer*, the Eighth Circuit remanded the case to the district court with the directive to give the habeas petitioner an opportunity to convert his claim to a *Bivens* action because the *only* issue the petitioner raised concerned conditions-of-confinement. *Id*. Here, although the vast majority of Mr. Dunlop's claims challenge conditions-of-confinement, he does raise two good time credit arguments. Again,

he argues that his placement in the SHU prevented him from earing good time credits. (Doc. No. 9 at 18.) And he contests a deduction of 14 days of good time credit sanction that resulted from a disciplinary action. (*Id*. at 21.) Converting the action to a *Bivens* claim seems futile, for the Eighth Circuit determined "the deprivation of good-time credits, is not challenging prison conditions, it is challenging an action affecting the fact or duration of the petitioner's custody" and is properly challenged through a § 2241. *Spencer*, 774 F.3d at 469 n.3 (citing *McIntosh v. United States Parole Comm'n*, 115 F.3d 809, 812 (10th Cir. 1997)).

Accordingly, I find the most fair and efficient disposition is to address Mr. Dunlop's habeas claims, dismiss the other claims without prejudice, and allow him to proceed with a separate *Bivens* action regarding those claims if he so chooses.

   c. **Good Time Credit Claims**

Mr. Dunlop raises two claims relating to good time credit. He contends that because he feared for his safety while at FCI Forrest City, he had no other choice but to request protective custody. (Doc. No. 9 at 19.) In response, BOP staff granted that request and placed him in a SHU. (*Id*.) This, according to Mr. Dunlop, impacted his ability to earn good time credit in two ways. First, because he feared for his safety, he refused staff's orders to leave the SHU. (*Id*. at 18, 37.) This resulted in the deduction of 14 days of good time credit he had earned. (Doc. No. 17-2.) Second, the time he spent in the SHU prevented him from earning good time credit, for he could not participate in the Residential Drug Abuse Program ("RDAP"). (Doc. No. 9 at 18.)

   1. <u>Fourteen Day Good Time Credit Sanction</u>

First, Mr. Dunlop contests the 14-day loss of good time sanction. (Doc. No. 9 at 18, 37; Doc. No. 17-2.) Mr. Dunlop was ordered by staff to depart the SHU and refused. (Doc. No. 17-2.) He was subsequently charged with refusing a work or program assignment. (*Id*.) A hearing

was held, he was found guilty, and sanctions were imposed. (*Id.*) This included 14 days of good time credit he had earned being deducted from his sentence. (*Id.*)

It is well settled that "a prisoner may bring a habeas action challenging the [Bureau of Prisons]'s execution of his sentence only if he first presents his claim to the BOP." *Mathena v. United States*, 577 F.3d 943, 946 (8th Cir. 2009) (citing *United States v. Chappel*, 208 F.3d 1069, 1069 (8th Cir. 2000) (per curiam)). Federal regulations afford prisoners administrative review of the computation of their credits. *United States v. Wilson*, 503 U.S. 329, 335 (1992) (citing 28 C.F.R. §§ 542.10-.16). Prisoners are able to seek judicial review of these computations "after exhausting their administrative remedies." *Id*. (citing *United States v. Bayless*, 940 F.2d 300, 304-05 (8th Cir. 1991)).

The BOP's Administrative Remedy Program exists "to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10. The process is a multi-step one. First, an inmate must "present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." *Id*. at § 542.13(a). Second, if the issue is not resolved, the inmate must submit a "formal written Administrative Remedy Request" at the institutional level. *Id*. at § 542.14(a).

Third, "[a]n inmate who is not satisfied with the Warden's response may submit an Appeal . . . to the appropriate Regional Director." 28 C.F.R. § 542.15(a). Fourth, "[a]n inmate who is not satisfied with the Regional Director's response may submit an Appeal . . . to the General Counsel." *Id*. An inmate may seek judicial review only after exhausting each of these steps. *Wilson*, 503 U.S. at 335; *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (administrative exhaustion "means

7

using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)").

Mr. Dunlop failed to exhaust his administrative remedies regarding his loss of good time credit sanction. (Doc. No. 17 at 4.) He submitted two appeals of FCI Forrest City's finding of guilt, and of those two, in only one did he contest the good time sanction. (*Id*. at 48). In his August 30, 2022, complaint, Mr. Dunlop asked to be transferred and complained about several incident reports lodged against him. (Doc. No. 9 at 62.) He submitted this complaint directly to the South Central Regional Office ("Regional Office"), who rejected his appeal for failure to file at the institutional level first and failure to file separate appeals for each unrelated issue. (*Id*.) On October 11, 2022, Mr. Dunlop again submitted a complaint directly to the Regional Office contesting the incident report that led to the good time credit sanction. (*Id*. at 48.) He claimed BOP staff violated hearing procedures when they prevented him from making a statement or calling a witness, and mentioned the good time credit sanction. (Doc. No. 9 at 49.) The Regional Office rejected this appeal for failure to file at the institutional level first, and directed him to do so. (*Id*. at 48.)

The law is clear that only after an inmate exhausts *each* step in the administrative remedy process can he seek judicial review. *Wilson*, 503 U.S. at 335. Again, administrative exhaustion "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Mr. Dunlop failed to do so here. And he blames his failure to exhaust on the BOP staff, who he asserts prevented him from filing complaints at the institutional level. (Doc. No. 9 at 5.) But the record reveals that during his time at FCI Forrest City, Mr. Dunlop submitted approximately one dozen administrative remedy requests to various BOP departments raising various issues. (Doc. No. 17-1.) Mr. Dunlop's own Petition includes eight letters from the BOP denying his appeals for failure to follow

8

the proper administrative remedy process, and all direct him to file a BP-9 at the institutional level first. (Doc. No. 9 at 32, 35, 41, 44, 49, 60, 62, 71.) And Respondent presented a declaration of Aleshia Morris, FCI Forrest City's Administrative Remedy Clerk, who certified that Mr. Dunlop failed to file a single BP-9 at the institutional level. (Doc. No. 17-1 at 4.) He failed to comply with this step in the administrative remedy process despite clear instructions from the BOP to do so on at least eight occasions. (*Id*.) The successful submission of at least one dozen complaints shows that the FCI Forrest City staff did not hinder Mr. Dunlop from engaging in the administrative remedy process.

That being said, I realize Mr. Dunlop may perceive my exhaustion findings as an unfairly technical "gotcha" mechanism to keep him out of court. To the contrary, the exhaustion requirement plays a critical role in the remedy process. The Supreme Court of the United States explained the important role of exhaustion as follows: "requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record."[3] *Jones v. Bock*, 549 U.S. 199, 204 (2007).

Mr. Dunlop is free to begin the administrative remedy process if he seeks to appeal his loss of good time sanction. Only after he completes all the steps that the BOP holds out, and does so properly so that the BOP addresses the issue on its merits, can he seek judicial review. *Woodford*, 548 U.S. at 90. Because he failed to exhaust his administrative remedies prior to seeking judicial review in this habeas action, this claim should be dismissed without prejudice.

---

[3] In *Jones*, the Supreme Court of the United States was describing exhaustion in the Prison Litigation Reform Act ("PLRA") context. Although the PLRA does not apply to petitions of writs of habeas corpus, the rationale behind exhaustion under the PLRA offers insight into the exhaustion requirement in the habeas context for petitions brought under 28 U.S.C. § 2241. 18 U.S.C. § 1997e(a).

2. Inability to Earn Good Time Credit

Mr. Dunlop's second good time credit argument is that the time he spent in the SHU prevented him from earning good time credit or participating in RDAP. (Doc. No. 9 at 18.) Although he does not state specific constitutional grounds under which he brings these claims, the Court will construe them as Due Process Clause claims. To support a such a claim, the individual must "establish an infringement of a protected liberty interest." *Bennett v. Outlaw*, 2009 WL 3808528, at *2 (E.D. Ark. Nov. 13, 2009) (citing *Ragan v. Lynch*, 113 F.3d 875, 876 (8th Cir. 1996)). And "the Constitution does not provide a prisoner a liberty interest in a reduced sentence, and the Supreme Court of the United States has held that a convicted person does not have a constitutional or inherent right to be conditionally released before the expiration of a valid sentence." *Id.*

Regarding Mr. Dunlop's RDAP claim specifically, it does appear that he was accepted into RDAP. (Doc. No. 17-2 at 11.) Although "the BOP's initial promise of early release conditioned upon successful completion of the program gave Petitioner an *expectation* of early release, it did not give him a liberty or other protected interest in early release." *Bennett*, 2009 WL 3808528, at *2 (emphasis added). And it appears that Mr. Dunlop knew prior to requesting protective custody that doing so would prevent him from participating in RDAP, which would in turn prevent him from obtaining an earlier release. (Doc. No. 9 at 21-22.)

As far as Mr. Dunlop losing the opportunity to earn good time credit, it is true that "inmates possess a protected liberty interest in not being arbitrarily deprived of their good-time credits." *Louis v. Department of Correctional Services of Nebraska*, 437 F.3d 697, 700 (8th Cir. 2006); *Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975 (1974). However, "prisoners do not have a liberty interest…in opportunities to obtain" the same. *Holman v. Cruz*, 2008 WL 5244580,

at *3 (D. Minn. Dec. 15, 2008).  And again, it was Mr. Dunlop himself who requested placement in protective custody.  (Doc. No. 9 at 18, 19, 31.)

Accordingly, neither Petitioner's participation in the RDAP program nor the opportunity to earn good time credit amounts to a protected liberty interest to establishes a due process violation. Both claims should be dismissed with prejudice.

### III.    CONCLUSION

IT IS, THEREFORE, RECOMMENDED that Mr. Dunlop's § 2241 Petition for Writ of Habeas Corpus (Doc. No. 9) be DISMISSED without prejudice, with one caveat.  His claims regarding his inability to earn good time credit be dismissed with prejudice.

DATED this 2nd day of May 2023.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE